IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO


SAN CRISTOBAL ACADEMY, INC., and
DAVID C. JOHNSON,

           **Plaintiffs,**

vs.                                              Civ. No.  10-1152 JH/WDS

TRANSITIONAL LIVING CORPORATION,
KENT SHERMAN, TED EARL, JIM HANLEY,
and STEPHEN COLE,

           **Defendants.**


**<u>MEMORANDUM OPINION AND ORDER</u>**

       This matter is before the Court on the following five motions: (1) *Defendant Edgar Earl's Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. No. 14], (2) *Defendant Ted Earl's Motion to Dismiss Plaintiffs' Claims Against Him Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2)* [Doc. No. 30]; (3) *Defendant Ted Earl's Motion to Dismiss Plaintiffs' Claim Against Him Pursuant to Rules 9(b) and 12(b)(6)* [Doc. No. 13]; (4) *Plaintiffs' Motion for Leave to File Their Sur-reply to Edgar Earl's Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. No. 29]; and (5) *Plaintiffs' Motion for Leave to File Their Sur-Reply to Defendant Ted Earl's Motion to Dismiss Plaintiffs' Claim Against Him Pursuant to Rules 9(b) and 12(b)(6)* [Doc. No. 28].  After considering these motions, the briefs filed by the parties, the evidence, and the applicable legal authorities, the Court concludes that it does have personal jurisdiction over Defendant Ted Earl.  As further explained herein, Plaintiffs' fraud claim against Earl will be dismissed in part, and their negligence claim will be dismissed in its entirety.  The remainder of Earl's motions to dismiss will be denied.

## DISCUSSION

**I.**     **MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

      **A.**     <u>**Legal Standard**</u>

"Where a district court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction to defeat the motion." *AST Sports Sci., Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008). The plaintiff may carry this burden "by demonstrating, via affidavit or other written materials, facts that if true would support jurisdiction over the defendant." *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) (internal quotation marks omitted). "All factual disputes are resolved in favor of the plaintiff[ ] when determining the sufficiency of this showing." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009). "[T]o defeat a prima facie showing of jurisdiction, the defendant must demonstrate that the presence of some other considerations would render jurisdiction unreasonable." *TH Agric. & Nutrition*, 488 F.3d at 1286 (internal quotation marks omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Id*. at 1286-87 (internal quotation marks omitted).  The New Mexico Supreme Court has held that the New Mexico long-arm statute is coextensive with the constitutional limitations imposed by the due process clause. *See Tercero v. Roman Catholic Diocese of Norwich*, 132 N.M. 312, 48 P.3d 50, 54 (2002). Thus, the Court need not conduct a statutory analysis apart from the due process analysis. *Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455 (10th Cir. 1996).

The due process analysis consists of two steps.  First, the Court should consider "whether

the defendant has such minimum contacts with the forum state 'that he should reasonably anticipate being haled into court there.' " *OMI Holdings, Inc. v. Royal Ins. Co. of Can.*, 149 F.3d 1086, 1091 (10th Cir. 1998) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). This minimum-contacts standard may be satisfied by showing general or specific jurisdiction.[1] *See id.* Second, if the defendant has minimum contacts within the forum state, the Court should determine "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " *OMI Holdings*, 149 F.3d at 1091 (quoting *Asahi Metal Indus. Co. v. Super. Ct. of Calif.*, 480 U.S. 102, 105 (1987) (plurality opinion)). This analysis is fact specific. *TH Agric. & Nutrition*, 488 F.3d at 1287, 1292.

### B.    Facts and Procedural History

The case arises from a business deal gone bad. Plaintiff San Cristobal Academy, Inc. ("SCA") operates an alcoholism and drug addiction recovery center in Taos, New Mexico. Plaintiff David C. Johnson ("Johnson") is the owner and operator of SCA. Using the name Gatehouse Academy, Defendant Transitional Living Corporation ("TLC") owns and operates competing alcohol and drug addiction recovery centers in Arizona and other states. The individual Defendants, Kent Sherman, Ted (Edgar) Earl, Jim Hanley, and Stephen Cole, are all current or former officers and directors of TLC.

---

[1] "General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts." *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008) (citation omitted). In this case, the Plaintiffs do not appear to assert that this Court has general personal jurisdiction over Defendant Ted Earl, but rather specific jurisdiction arising from his alleged purposeful conduct directed at New Mexico.

In May of 2009, Defendants approached Plaintiffs regarding purchasing Plaintiffs' New Mexico facility. Ultimately, the buyout did not materialize because of Defendants' lack of liquidity. Instead, on September 17, 2009, the parties entered into a management agreement in which Defendants took over management of SCA. Plaintiffs allege that in order to induce them into entering the management agreement, Defendants made multiple misrepresentations to them regarding, *inter alia*, the efforts that TLC would make to increase SCA's admissions, the manner in which TLC would market SCA's facility, and the way in which Defendants would manage SCA's finances. Plaintiffs further allege that, in an effort to run SCA out of business, Defendants failed to meet their obligations under the management agreement, thereby leaving Plaintiffs in a very difficult financial position and with substantially fewer clients than they had before entering into the management agreement. In their First Amended Complaint, filed March 29, 2011, Plaintiffs assert a claim for breach of contract against TLC only (Count I), as well as claims of fraud and fraudulent inducement (Count II), conspiracy (Count III), negligence (Count IV), and tortious interference with existing and prospective contractual relations (Count V) against all Defendants.

Defendant Ted Earl ("Earl") has filed two motions to dismiss the claims against him for lack of personal jurisdiction. Both Earl and Johnson have filed affidavits in connection with their briefs on those motions, and those affidavits differ considerably with regard to Earl's actions. Viewing the affidavits in the light most favorable to the Plaintiffs and resolving all factual disputes in Plaintiffs' favor, the facts that are relevant to personal jurisdiction are as follows.

Earl currently lives in California, where he has resided for the past five years. He has never resided in New Mexico, though he did visit once. However, that visit had nothing to do with the management agreement between Plaintiffs and TLC. Earl has never owned property or a bank account in New Mexico, nor is he a party to the management agreement between Plaintiffs and TLC.

4

Earl is now retired, but during the relevant period he was on the board of directors of TLC.  In early 2009, Earl contacted Johnson in New Mexico on behalf of TLC regarding purchasing SCA.  When the purchase did not materialize, Earl suggested that SCA enter into a management agreement with TLC.  The negotiations of the management agreement were the same as those for the attempted purchase, and Earl participated in those discussions.  Earl called Johnson in New Mexico and sent Johnson multiple emails during the course of the negotiations.  During these communications, Earl told Johnson that TLC and its agents would work to increase SCA's admissions—a statement that Johnson now alleges was a misrepresentation.  These communications took place while Johnson was at SCA's facility in Taos, New Mexico.  Earl has never told prospective clients of SCA that it was financially unstable or that it would be dangerous for parents to send their children there.

C. **Analysis**

1. *Minimum Contacts*

Under the specific-jurisdiction requirement, a plaintiff satisfies the minimum contacts standard by showing that (1) the defendant has "purposefully availed itself of the privilege of conducting activities or consummating a transaction in the forum state," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc*., 514 F.3d 1063, 1071 (10th Cir. 2008) (emphasis omitted) (internal quotation marks omitted); and (2) "'the litigation results from alleged injuries that arise out of or relate to those activities,'" *TH Agric. & Nutrition*, 488 F.3d at 1287 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

(a) *Purposeful Availment*

"Purposeful availment requires actions by the Defendant which create a substantial connection with the forum state." *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 149 F.3d 1086, 1092 (10th Cir. 1998) (internal quotation marks omitted). "[W]e must examine the quantity and

5

quality of Defendant's contacts with [the forum state]...." *Id.* (second emphasis omitted). The purpose of this requirement is to "ensure[ ] that a defendant will not be subject to the laws of a jurisdiction solely as the result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *AST Sports Sci.*, 514 F.3d at 1058 (internal quotation marks omitted); *accord Rusakiewicz v. Lowe*, 556 F.3d 1095, 1101 (10th Cir. 2009).  In short, the Plaintiff must demonstrate that the Defendants' contacts were not "random, fortuitous, or attenuated." *AST Sports Sci.*, 514 F.3d at 1058 (internal quotation marks omitted).

The Court concludes that Earl's contacts with New Mexico were not random, fortuitous, or attenuated.  Rather, the evidence before the Court is that Earl purposefully directed communications to Johnson in New Mexico for the express purpose of purchasing a New Mexico business.  When that transaction proved untenable, at Earl's suggestion the parties directed their continuing negotiations toward a management agreement instead.  Earl called and emailed Johnson in New Mexico for that purpose, and he told Johnson that TLC would strive to increase SCA's admissions—a specific statement that now serves as one of the grounds of Plaintiffs' fraudulent inducement claim.   Thus, this requirement is satisfied.

        (b)     *Arise Out of or Relate to Forum Activities*

The Court also must "determine whether a nexus exists between the Defendants' forum-related contacts and the Plaintiff's cause of action." *TH Agric. & Nutrition*, 488 F.3d at 1291 (brackets omitted) (internal quotation marks omitted).  When analyzing this issue, courts generally follow one of three approaches: (1) proximate cause; (2) "but-for" causation; or (3) substantial connection.  *See  Dudnikov*, 514 F.3d at 1078-80. Although the Tenth Circuit has rejected the substantial-connection approach outright, *id*. at 1078, it has not expressly "pick[ed] sides" (i.e., exclusively made an election) between the proximate-cause and the but-for-causation approaches,

*id*. at 1079.  Proximate cause is the most restrictive approach and requires courts to analyze "whether any of the defendant's contacts with the forum are relevant to the merits of the plaintiff's claim." *Id*. at 1078 (internal quotation marks omitted); *see O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 318-19 (3d Cir. 2007) (noting that the cause of action must arise out of the defendant's in-forum conduct).  "But-for" causation is less restrictive and supports the exercise of personal jurisdiction based on "any event in the causal chain leading to the plaintiff's injury." *Dudnikov*, 514 F.3d at 1078.

The Court need not decide which standard to apply because under all of them, there is a nexus between Earl's contacts with New Mexico and Plaintiffs' claims.  Viewed in the light most favorable to the Plaintiffs, the evidence shows that Earl's contacts with this forum serve as a substantial basis for a least two of Plaintiffs' claims.  Plaintiffs have alleged that in the course of the purchase/management agreement, Earl made false statements to Johnson that induced him to enter into the management agreement.  As alleged by the Plaintiffs, such statements are the cause of their fraud and fraudulent inducement claims, as well as their conspiracy claim.  Thus, this requirement is satisfied as well.

2. *Traditional Notions of Fair Play and Substantial Justice*

If the defendant has minimum contacts with the forum state, "we must still determine whether exercising personal jurisdiction would offend traditional notions of fair play and substantial justice." *AST Sports Sci.*, 514 F.3d at 1061 (internal quotation marks omitted).  Accordingly, the Court must analyze whether its exercise of personal jurisdiction "is reasonable in light of the circumstances surrounding the case."  *Id*. (internal quotation marks omitted).  The defendant bears the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080 (internal quotation marks omitted).

This reasonableness analysis requires the weighing of five factors:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Pro Axess, Inc. v. Orlux Distribution, Inc.*, 428 F.3d 1270, 1279-80 (10th Cir. 2005) (internal quotation marks omitted). "In assessing the reasonableness of jurisdiction, we also take into account the strength of a defendant's minimum contacts." *TH Agric. & Nutrition*, 488 F.3d at 1292. "[T]he reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Id*. (brackets omitted) (internal quotation marks omitted).

The Court concludes that the exercise of jurisdiction is reasonable in light of the facts and circumstances of this case. Notably, Earl has not attempted to meet his burden, set forth in *Dudnikov*, of presenting a compelling case that other considerations would render jurisdiction unreasonable. With regard to the first *Pro Axess* factor, Earl has not come forward with evidence or argument demonstrating the burden to him that would result from being subjected to jurisdiction in New Mexico. Second, New Mexico has a strong interest in resolving this dispute, as the Plaintiffs are citizens of New Mexico who are alleging claims that originate in this state. Further, in the absence of evidence to the contrary, the Plaintiffs have an interest in obtaining convenient and effective relief. It would appear that the interstate judicial system's interest in obtaining an efficient resolution of controversies would be served by hearing the case in this forum, as much of the evidence regarding the management agreement, and Defendants' alleged conduct under that agreement, is presumably in New Mexico. The fifth factor, the shared interest of the several states

8

in furthering fundamental social policies, appears to be neutral in this case. In light of the foregoing, the Court concludes that exercising personal jurisdiction over Earl would not offend traditional notions of fair play and substantial justice.

In light of all of the foregoing, the Court concludes that it does have personal jurisdiction over Earl, and it will deny both of his motions to dismiss on that basis. In addition, Plaintiffs' motion for leave to file a surreply to Earl's motion to dismiss for lack of personal jurisdiction is moot.

## II.     MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM AND FAILURE TO PLEAD FRAUD WITH SPECIFICITY

In accordance with Rule 12(b)(6), Earl has filed two motions to dismiss Plaintiffs' claims for failure to state a claim against him. The first motion, filed February 16, 2011, addresses the fraudulent inducement claim in the original complaint. On March 29, 2011, Plaintiffs filed an amended complaint, which added both factual allegations and three additional causes of action. The second motion to dismiss, filed two months later on April 15, 2011, addresses the claims in Plaintiffs' amended complaint.

### A.     <u>Failure to Properly Plead Fraud</u>

Plaintiffs argue that the February 16 motion is now moot, the first amended complaint having superseded the original complaint. However, Earl contends that with one exception, the Plaintiffs' allegations of fraud are too general to satisfy Rule 9(b). The Court agrees with Earl.

Rule 9(b) of the Federal Rules of Civil Procedure requires a heightened pleading standard for all claims of fraud. *See* Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."); *see also United States ex rel. Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726–27 (10th Cir. 2006) (stating

9

that Rule 9(b) requires a plaintiff to "set forth the time, place, and contents of the false representation, the identity of the party making the false statements and the consequences thereof" (internal quotation marks omitted)).   Rule 9(b)'s purpose is "to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based. . . ."   *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992), *impliedly overruled on other grounds*, *Central Bank of Denver, N.A. v. First Interstate of Denver, N.A.*, 511 U.S. 164, 114 S.Ct. 1439 (1994).

In their amended complaint, Plaintiffs make the following allegations regarding representations by Earl.  They allege that sometime in May of 2009, Earl and co-defendant Jim Hanley represented to Plaintiffs that TLC was interested in buying SCA because TLC's Gatehouse facilities did not have sufficient room to accommodate the growing number of clients that were enrolling in its programs, and that Defendants wanted to acquire SCA in order to increase revenue to make TLC more attractive to outside investors.  Doc. No. 27 at ¶  13.   At this point in the amended complaint Plaintiffs do not allege specific statements made by Earl and Hanley individually, nor do they allege specific dates on which any of the communications occurred or the method of communication.  Plaintiffs also allege that "all Defendants misrepresented to Plaintiffs that the purpose of the Management Agreement was to grow both TLC and SCA, when in reality Defendants' only objective was to take all that it could from Plaintiffs and then run them out of business."  *Id*. at ¶ 25.   Again, this allegation is unsupported by allegations of specific statements by a particular defendant on a particular day.  Plaintiffs further allege that on "multiple occasions from May 2009 through September 2009," Earl and his individual co-defendants "all represented to Plaintiffs through telephone calls and via email that Defendants would work to increase SCA's admissions."  *Id*. at ¶  20.  Again, Plaintiffs do not identify any specific statement by a particular

Defendant on a particular date, with one exception.  In the final sentence of Paragraph 20 of the amended complaint, plaintiffs allege that Earl made such a misrepresentation to Johnson in an email dated May 31, 2009.  It is this sole allegation that Earl concedes satisfies Rule 9(b).

The Court agrees that, aside from this final sentence of Paragraph 20, the remainder of the allegations of fraud or fraudulent inducement fail to lack the specificity required under Rule 9(b).  Rather, these are the type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that fail to pass muster under that rule.  *Ashcroft v. Iqbal*, ––– U.S. ––––, ––––, 129 S. Ct. 1937, 1949 (2009).  There are no allegations setting forth "the who, what, when, where and how of the alleged fraud."  *Sikkenga*, 472 F.3d at 727.  Thus, insofar as it is based on any misrepresentations outside those described in the final sentence of Paragraph 20, Plaintiffs' claim against Earl for fraud/fraudulent inducement will be dismissed for failure to plead with particularity.

Plaintiffs filed a motion for leave to file a surreply on this issue with their proposed surreply attached as an exhibit.  *See* Doc. No. 28.  In reaching its decision on the motion to dismiss, the Court has considered the surreply.  Accordingly, the Plaintiffs' motion for leave to file their surreply is granted, and it will be deemed to have been filed.

### B.   <u>Failure to State a Claim</u>

#### 1.   *Legal Standard*

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 1949. Although the complaint need not recite "detailed factual allegations, . . . the factual allegations must be enough

11

to raise a right to relief above the speculative level." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1191 (10th Cir. 2009) (quotation omitted). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S.Ct. at 1949 (2009). The Court will accept as true all well-pleaded facts and " 'construe all reasonable allegations in the light most favorable to the plaintiff.'" *Sunrise Valley, LLC v. Kempthorne*, 528 F.3d 1251, 1254 (10th Cir. 2008). In ruling upon a motion under Rule 12(b)(6), the Court considers only the contents of the complaint. "[I]f a party submits, and the district court considers, materials outside the pleadings," the matter must be resolved under summary-judgment principles, rather than under Rule 12. *Prager v. LaFaver*, 180 F.3d 1185, 1188 (10th Cir. 1999).

As discussed above, under the principles set forth in *TH Agric. & Nutrition, LLC v. Ace European Grp. Ltd.*, 488 F.3d 1282, 1286 (10th Cir. 2007) and *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009), the Court considered the affidavits of Johnson and Earl in its disposition of Earl's motion to dismiss for lack of personal jurisdiction. However, those affidavits are matters outside the pleadings. Thus, with regard to Earl's motion to dismiss under Rule 12(b)(6), the Court will consider only the allegations of the amended complaint.

### 2.  *Discussion*

#### (a)  Fraud and Fraudulent Inducement (Count II)

Earl moves to dismiss the remaining fraud claim under Rule 12(b)(6). As Earl correctly points out, under the amended complaint Plaintiffs have alleged that in an email dated May 31, 2009, Earl made misrepresentations to Johnson regarding Defendants' intent to increase SCA's admissions in an effort to induce them into entering the management agreement. *See* Doc. No. 27 at ¶¶ 19-20. Earl argues that the fraud claim should be dismissed because the contents of that email reveal that the email communication between himself and Johnson on that date was actually in

12

reference to the attempted *purchase* of SCA by the Defendants, not the management agreement they ultimately signed and that is the subject of this lawsuit.  In response, Plaintiffs argue that the negotiations of the sale of SCA were one in the same with the negotiations of the management agreement, and that once it became clear that Defendants could not buy SCA, the parties merely redirected their ongoing discussions to a management contract.  For support, Plaintiffs point to Johnson's affidavit, in which he avers this much.  Thus, argue Plaintiffs, there can be no meaningful distinction between representations made in the course of the attempted buyout and those made in negotiating the management agreement.  In reply, Earl points out that the amended complaint contains no allegation that the negotiations of the management agreement were a continuation of those for the failed purchase of SCA.

The forgoing arguments require reference to matters outside the pleadings—specifically, the May 31, 2009 email and Johnson's affidavit.  However, this is a motion to dismiss, and at this stage the Court declines to transform it to a motion for summary judgment by considering the evidence upon which the parties rely.  Instead, the Court looks solely to the text of the amended complaint. That document reveals that Plaintiffs have alleged that to induce Plaintiffs into entering the management agreement, Defendants made multiple misrepresentations to Plaintiffs.  Doc. No. 27 at 19.  Then, in the next paragraph, Plaintiffs allege examples of such misrepresentations.  As previously discussed, most of these are not sufficiently specific to support a fraudulent inducement claim under Rule 9(b).  However, the allegation regarding Earl's May 31, 2009 email is sufficiently specific.  There is nothing in the text of the amended complaint that indicates that this communication was not relevant to the negotiation of the management agreement.  Based on the allegations of the complaint, Plaintiffs have alleged sufficient facts to support their claim of fraudulent inducement against Earl.  Accordingly, Earl's motion to dismiss Count II for failure to

state a claim against him will be denied.

        (b)          <u>Tortious Interference With Contractual Relations (Count V)</u>

Earl moves to dismiss Plaintiffs' claim for tortious interference with existing and prospective contractual relations.   As grounds for this motion, Earl argues that this claim is simply a recharacterization of Plaintiffs' fraud claim and therefore should be dismissed because it is not pled with the required specificity.   The Court disagrees with Earl.   First, he has cited no Tenth Circuit authority for the proposition that, under circumstances similar to those presented here, a claim for tortious interference is really another form of fraud that must be pled with specificity.   Second, he has ignored the fact that fraudulent inducement to enter a contract and tortious interference with contractual relations are distinctly different claims.

Under New Mexico law, the elements of tortious interference are (1) a contractual or prospective contractual relationship, (2) the defendant's knowledge of the contractual relationship, (3) intentional and improper interference with the relationship, and (4) damages based on the interference.   *See Zarr v. Wash. Tru Solutions, LLC*, 2009-NMCA-050, ¶¶ 6-7, 146 N.M. 274, 208 P.3d 919 (Ct. App. 2009).   In their amended complaint, Plaintiffs have alleged that they and the Defendants ran similar, competing businesses.   Doc. No. 27 at ¶¶ 11-13.   Plaintiffs allege that Defendants interfered with their contracts with existing  SCA patrons by "having all SCA clients sign new TLC Enrollment Contracts and make payments directly to Defendants."   *Id*. at ¶  24.   Further, they allege that after defaulting on their obligations under the management agreement, Defendants "began contacting Plaintiffs' prospective clients and telling them that TLC 'used to own' SCA, that 'SCA was financially unstable,' and that it would be 'dangerous' for clients to send their children to SCA."   *Id*. at ¶ 28.   Finally, Plaintiffs allege that Defendants made these representations to Plaintiffs' prospective clients with the "specific intention of injuring Plaintiffs' reputation in the

industry, depriving Plaintiffs of clients and the attendant revenue, and forcing Plaintiffs out of business."  *Id.* at ¶ 29.

These allegations are sufficient to state a claim for tortious interference under New Mexico law.  While Earl complains that Plaintiffs do not allege specifically when each of the Defendants spoke to SCA's current or prospective clients or what was said by each, the law does not require a heightened pleading standard for tortious interference of contractual relations.  Accordingly, the motion to dismiss this claim under Rule 12(b)(6) will be denied.

(c)      Conspiracy (Count III)

Earl moves to dismiss the conspiracy claim against him on the grounds that a claim for civil conspiracy does not lie unless one of the alleged co-conspirators is liable on another independent cause of action for which all conspirators may be held liable.  According to Earl, the only underlying unlawful act alleged by the Plaintiffs is fraudulent inducement.  He reasons that the fraud claim should be dismissed, thereby taking the conspiracy claim along with it.

The Court disagrees with Earl for two reasons.  First, as discussed above, Plaintiffs have alleged a fraud claim against Earl sufficient to withstand a motion to dismiss under Rule 12(b)(6).[2] Thus, the fraud claim could serve as the independent cause of action underpinning a conspiracy claim.  Second, Plaintiffs have stated a claim for tortious interference with contractual relations. This claim could also serve as the "anchor" for a conspiracy claim.  Therefore, the Court will deny Earl's motion to dismiss Count III for failure to state a claim.

(d)      Negligence (Count IV)

Plaintiffs have alleged that Defendants were negligent in their provision of management

---

[2] At this point, the Court expresses no opinion as to whether Plaintiffs have properly plead fraud against any other defendant.

15

services to Plaintiffs and that they breached unspecified legal duties owed to Plaintiffs.  Doc. No. 27 at ¶¶ 41-42.  Earl argues that this negligence claim is merely a restatement of Plaintiffs' breach of contract claim against TLC.  He contends the claim should be dismissed for two reasons: first, because he was not a party to the management agreement between SCA and TLC, and second, because one cannot assert a negligence claim where the duties breached are those created by contract, thereby making the negligence claim duplicative of a breach of contract claim.

Plaintiffs do not respond to the motion to dismiss this claim.  Under our Local Rules, failure to respond constitutes consent to grant the motion. D.N.M. LR-Civ. 7.1(b).  Accordingly, Plaintiffs' claim for negligence will be dismissed under Rule 12(b)(6).

## SUMMARY

The Court has personal jurisdiction over Earl.  Plaintiffs have pled their fraud and fraudulent inducement claim against Earl with sufficient specificity to satisfy Rule 9(b), and the amended complaint's allegations of fraud against Earl are sufficient to withstand a challenge under Rule 12(b)(6).  Similarly, Plaintiffs' tortious interference and conspiracy claims against Earl remain viable.  However, Plaintiffs' claim against Earl for negligence will be dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED** that:

(1)     *Defendant Edgar Earl's Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. No. 14] is **DENIED**;

(2)     *Defendant Ted Earl's Motion to Dismiss Plaintiffs' Claims Against Him Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(b)(2)* [Doc. No. 30] is **GRANTED IN PART** and **DENIED IN PART**;

16

(3)     *Defendant Ted Earl's Motion to Dismiss Plaintiffs' Claim Against Him Pursuant to Rules 9(b) and 12(b)(6)* [Doc. No. 13] is **GRANTED IN PART** and **DENIED IN PART**;

(4)     *Plaintiffs' Motion for Leave to File Their Sur-reply to Edgar Earl's Motion to Dismiss for Lack of Personal Jurisdiction* [Doc. No. 29] is **DENIED AS MOOT**; and

(5)     *Plaintiffs' Motion for Leave to File Their Sur-Reply to Defendant Ted Earl's Motion to Dismiss Plaintiffs' Claim Against Him Pursuant to Rules 9(b) and 12(b)(6)* [Doc. No. 28] is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**

17